UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 25-01063-5-PWM |
| | ) | |
| CAROLINA PROUD | ) | CHAPTER 11 |
| INVESTMENT GROUP, LLC | ) | |
| | ) | |
| DEBTOR. | ) | |

## PLAN OF REORGANIZATION

      Pursuant to the provisions of 11 U.S.C. §§ 1123 and 1190, the Debtor hereby submits the following Plan of Reorganization (the "Plan"):

## I. SUMMARY OF PLAN

      This Plan contemplates a continuation of business operations.  The Debtor anticipates selling real property, retaining real property, restructuring certain secured and unsecured debts, and distributing proceeds from the sale of real estate to creditors. The Debtor believes that the sale of all its assets will result in the greatest return to all creditors.

      The Plan is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to operate and sell its assets as described herein.

      The Debtor's liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

      The Debtor owns real property in Mahoning County, Ohio, Pitt County, North Carolina, and Watauga County, North Carolina.  The Debtor leases the properties in Mahoning County, Ohio and Pitt County, North Carolina.  The Debtor will use this rental income to restructure and repay secured creditors that have liens on these properties.  The Debtor has employed a real estate professional to market and sell the property in Mahoning County.  The Debtor believes that the proceeds from the sale of real estate will generate enough revenue to pay all liens upon the property, pay all administrative claims, and pay all unsecured claims in full.

The Plan should be read in conjunction with the liquidation analysis (Exhibit "A"), and summary of claims (Exhibit "B"). The Debtor urges Creditors and parties in interest to consult with counsel. The parties in interest should not rely on any representations not contained in the Plan in deciding on voting on the Plan.

## II. DEFINITIONS

1.    "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under §507(a)(1) of the Bankruptcy Code.

2.    "ALLOWED CLAIM" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.    "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.    "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended. References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

5.    "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.    "CLAIM" shall mean a duly listed or a timely filed Allowed Claim which is allowed and ordered to be paid by the Court.

7.    "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.    "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §§ 1129 and 1191.

9.    "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §§ 1129 and 1191.

10.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12.     "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.     "DEBTOR" shall mean Carolina Proud Investment Group, LLC.

14.     "DISBURSING AGENT" shall mean the Debtor or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.  The Debtor, creditors, subchapter V trustee, or interested party shall object to any filed claim within sixty (60) days of the Effective Date, otherwise the claim becomes final and allowed.

16.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

17.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of the Debtor in property, whether personally held or not, at the time of the Debtor's bankruptcy filing.

18.     "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

19.     "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

20.     "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21.  "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

22.  "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

23.  "PETITION DATE" shall mean the date the Debtor filed a voluntary chapter 11 petition or March 12, 2025.

24.  "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25.  "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

26.  "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27.  "SALE" shall mean the disposition of certain assets of the Debtor through a transfer of ownership from the Debtor to another person or entity as set forth in this Plan.

28.  "NET SALE PROCEEDS" mean the remaining funds of a sale of certain assets of the Debtor as set forth in this Plan, after payment of all reasonable and ordinary closing costs,(including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

29.  "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

30.  "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

31.    "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

## III. CLASSIFICATION AND TREATMENT OF
## CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

A.    **Class 1 - Administrative Costs:**

(1) Description of Claims.   Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of professionals will be paid subject to Court approval:

| Professional | Services Provided | Amount Owed |
|---|---|---|
| C. Scott Kirk Attorney at Law, PLLC | Attorney for Debtor | To be Determined by Court (Fees are estimated in Exhibit) |
| Ciara L. Rogers | Subchapter V Trustee | To be Determined by Court |

(2) Impairment.     This class will be impaired.

(3) Treatment.   Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim.  All claimants in this class anticipate payment in full will occur upon the close of the sale of the Debtor's assets.

B.    **Class 2 – Ad Valorem Taxes:**

(1) Description of Claims. Class 2 consists of Claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed. The Debtor is aware of the following Claim(s) in this Class:

| Taxing Entity | Claim No. | Amount Owed |
|---|---|---|
| Pitt County Tax Collector | 1-1 | $1,461.14 |

| Mahoning County Treasurer | 2-1 | $6,863.92 |
| Mahoning County Treasurer | 3-1 | $5,679.26 |
| Watauga County Tax Administration | | $33.98 |

(2)   <u>Impairment</u>. This class will be unimpaired.

(3)   <u>Treatment.</u> The Debtor proposes to pay Claims in this class within five years of the date of relief.  The Debtor will make quarterly payments to this class beginning on the last day of the first full quarter after the Effective Date. The Debtor estimates that payments to this class will be $778.02 per quarter.

The Debtor will continue to market and sell the property located in Mahoning County, Ohio, which is subject to the above referenced tax claims.  Upon completion of the sale of the property, those claims will be paid in full at closing.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense. *See In Re St. Lawrence Homes, Inc.,* citing *In Re Members Warehouse, Inc.,* 991 F.2d 116, 118-119 (4th Cir.1993).

### C.   Class 3- Priority Tax Claims

(1)   **Description of Claims**.      Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law.  The Debtor is not aware of the existence of a claim in this class.  The Debtor proposes the following:

(2)    <u>Impairment</u>. This class will be unimpaired.

(3)   <u>Treatment</u>.   The Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. The Debtor does not anticipate that any such claims will be filed.

**Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full within five years of the date of relief.  The Debor shall pay this class equal quarterly payments beginning on the last day of the first full quarter after the Effective Date.  In the event that the sale of the property in Mahoning County, Ohio results in available funds to pay this class in full, the Debtor shall pay this class in full upon receipt of the proceeds from sale.

**Unsecured general tax claims**, if any, will be treated as provided below in the section relating to "General Unsecured Claims."

    **D.**   <u>Class 4 – Secured Claim of GREM, LLC</u>:

(1)    **Description of Claims**.    Class 4 consists of the secured claim of GREM, LLC ("GREM").  On or about April 21, 2021, the entered into a promissory note in the amount of $150,000.00.  The promissory note is secured by a mortgage deed acting as lien on upon the property owned by the debtor located at 28 Jacobs Rd., Youngstown, Ohio.  The mortgage deed was perfected by a filing in the Mahoning County Recorder's Office in Book No. 6514 and Page No. 1611.  At the time of filing the Debtor estimates that the balance of $130,486.00 is owed on the note.

(2)    <u>Impairment</u>. This class will be impaired.

(3)    <u>Treatment</u>.  The Debtor proposes the following treatment:  Prior to filing this Plan, the Debtor has employed a professional to market and sell the property.  On May 8, 2025, the Court entered an order approving the professional's employment.  The Debtor will continue to market the property for sale and will make all efforts to sell the property as soon as practicable.  The Debtor shall have six months from the Effective Date to sell the property.  In the event that the property has not sold within six moths of the Effective Date, the automatic stay/plan injunction shall dissolve and GREM may pursue whatever nonbankruptcy law remedies it may have to enforce its mortgage deed.  The Debtor may seek to extend the time in which to sell the property by making a motion to this Court in the event that there is a pending contract to sell the property but closing of the sale would take place after the marketing period has expired.

The Debtor estimates that GREM is owed the sum of $130,486.00 as of the date of relief.  GREM has not filed a proof of claim.  The Debtor proposes to pay GREM monthly payments equaling the non-default rate of interest on the note during the marketing period.  The Debtor estimates that those payments will be $355.29 per month.  Payments shall be begin on the first day of the first full month from the Effective Date.  Upon sale of the property, all outstanding principal and interest shall be paid to GREM.

All remaining provisions of the note and mortgage deed not modified by this treatment shall remain in full force and effect.  GREM shall retain its lien upon the property as it existed on the date of relief and in its priority status on the date of relief.

    **E.**   <u>Class 5 – Secured Claim of United Bank</u>:

(1)    <u>Description of Debt</u>. The Debtor is aware of the following claims:

On or about January 13, 2023, the Debtor executed a note and deed of trust in favor of United Bank. The proceeds from the note were used to purchase all real property located at 2607-B Bluff View Rd., Greenville, NC 27834. The note was secured by a deed of trust filed in the Pitt County Register of Deeds (Book No. 4372 and Page No. 621). The Debtor believes the lien is properly perfected. The Debtor believes that the property has a value of $130,000.00. At the time of filing, the Debtor believes that United Bank was owed $114,085.00. United Bank has not filed a proof of claim.

      (2)    <u>Impairment</u>. This class will be impaired.

      (3)    <u>Treatment</u>. The Debtor proposes the following treatments:

This obligation shall be treated as fully secured in the amount of $115,553.03 or in such an amount that is evidenced by United Bank up to the amount of the value of the collateral. All post-petition adequate protection payments shall be credited in accordance with the terms of the note. United Bank shall retain its lien as it existed on the date of relief to its extent and priority. Any provision of the note and deed of trust not modified in this treatment shall remain in full force and effect as it existed on the date of relief. The balance of the note shall be amortized over a 20 year period with interest accruing at 8% per annum. The entire amount of principal and interest due on the note shall be due on the 5th year anniversary of the Effective Date. The Debtor estimates payments on the note will be $966.53 per month.

## F.    <u>Class 6 – Secured Claim of Pentagon Federal Credit Union</u>

      (1)    <u>Description of Class</u>. On April 14, 2022, Anna Hromyak entered into a residential mortgage note and deed of trust with Pentagon Federal Credit Union ("Pentagon") to purchase real property located 411 River Branch Rd., Greenville, NC 27858. The deed of trust was perfected by way of filing in the Pitt County Register of Deeds (Book No. 4271 and Page No. 468). The property was transferred to the Debtor on October 12, 2022 by way of quit-claim deed as recorded in the Pitt County Register of Deeds (Book No. 4343 and Page No. 388). At the time of filing, the sum of $346,547.00 was owed on the note.

      (2)    <u>Impairment</u>. This class will be unimpaired.

      (3)    <u>Treatment</u>. The Debtor will treat this claim as fully secured in the amount that existed on the date of relief. All provisions of the note and deed of trust shall remain in full force and effect. The Debtor shall resume contractual principal and interest payments of $2,453.53 on the first day of the first full month following the Effective Date. Any pre-petition and post-petition contractual payment arrearages shall be paid within five years of the Effective Date. The

Debtor estimates the arrearage payment to be $204.46.  The Debtor shall make the arrearage payment beginning on the first day of the first full month after the Effective Date.

G.    <u>Class 7- Secured Claim of First Bank/Citizens Bank</u>

(1)    <u>Description of Class</u>.  On March 3, 2022, Anna Hromyak entered into a promissory not and deed of trust with First Bank to purchase real property located at 2032 Cherry Lane, Winterville, NC  28590.  The deed of trust was perfected by a filing in the Pitt County Register of Deeds (Book No. 4251 and Page No. 838).  The property was transferred to the Debtor on March 3, 2022 by way of a quit-claim deed filed in the Pitt County Register of Deeds (Book No. 4251 and Page No. 834).  The note and deed of trust was assigned to Citizens Ban on April 23, 2025 by way of a filing in the Pitt County Register of Deeds (Book No. 4632 and Page No. 378).  At the time of filing, the Debtor estimates that the amount of $178,703.00 was owed on the note.

(2)    <u>Impairment</u>.  This class will be unimpaired.

(3)    <u>Treatment</u>.  The Debtor will treat this claim as fully secured in the amount that existed on the date of relief.  All provisions of the note and deed of trust shall remain in full force and effect.  The Debtor shall resume contractual principal and interest payments of $1,152.43 on the first day of the first full month following the Effective Date.  Any pre-petition and post-petition contractual payment arrearages shall be paid within five years of the Effective Date.  The Debtor estimates the arrearage payment to be $96.04. The Debtor shall make the arrearage payment beginning on the first day of the first full month after the Effective Date.

I.    <u>Class 8- General Unsecured Creditors</u>

(1)    <u>Description of Class</u>.  This class consists of all holders of general non-priority unsecured claims against the Debtor.  The Debtor estimates that this class is owed the sum of $24,761.59.

(2)    <u>Impairment</u>.  This class will be impaired.

(3)    <u>Treatment</u>.  Upon completion of the sale of the property located at 28 Jacobs Rd., Youngstown, Ohio, the Debtor shall distribute the net proceeds from sale to this class.  Proceeds from the sale shall be distributed *pro rata* to the holders of each claim. The Debtor anticipates that this class will be paid in full from the proceeds from sale.  In the event that the property does not sale, then this class will receive payments in the amount of $458.55 to be distributed pro rata beginning on the first day of the sixth full month following the Effective Date.

J.    <u>Class 9- Equity Security Holders</u>

(1)    <u>Classification</u>.      This class consists of the members of the Debtor. The sole member of the Debtor is Anna Hromyak.

(2)    <u>Impairment</u>.      This class will be unimpaired.

(3)    <u>Treatment</u>.  The membership interests in the Debtor shall remain upon confirmation of this Plan with the same interests and ownership as existed on the date of relief.

## IV. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor. The Debtor hereby assumes all leases in which the Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V. MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

*A.*    ***The Debtor proposes to sell real property***. The Debtor has placed for sale its real estate located at 28 Jacobs Rd., Youngstown, Ohio for the sum of $350,000.00. The Debtor will continue to market and sell this property as described above for six months from the Effective Date.  Once a contract for sale is entered and upon closing of the sale of the properties, the closing agent shall disburse funds as follows:  (a) ordinary costs of closing (deed preparation, closing attorney, etc.); (b) any taxes owed for prior years (Class 2 Mahoning County Claim); (c) 2025 prorated real estate taxes owed; (d) payment of GREM LLC and any other lienholders; (e) chapter 11 administrative claims (Class 1); and (f) all remaining funds paid to C. Scott Kirk, Attorney at Law to be held in trust and disbursed to Class 8 in accordance with the terms of this plan.  After payment of Class 8, any remaining funds from sale will be distributed to the Debtor.

The Debtor will maintain adequate liability and casualty insurance on all properties.  The Debtor will continue to collect rents, make repairs as needs, pay utilities, and all other customary costs of owning and leasing rental properties.

**B.**    ***Deficiency Claims***. Each secured creditor who is entitled to foreclose on its collateral under the terms of the Plan shall have 120 days after the Effective Date to complete the foreclosure of its collateral. Each such creditor shall have 150 days following the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full. Such proof of claim shall include an itemization of the principal, interest, and other costs. Any such deficiency claim shall be treated in the unsecured creditor class. In the event the Debtor obtains his Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period. In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

*C.*    ***De Minimis Distributions***. No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

*D.*    ***Unclaimed Property***. If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan. If a distribution check is not negotiated by the creditor within ninety (90) days of the date of the check, or the distribution check is not deliverable to the creditor by way of First Class U.S. Mail, addressed to the address listed in the Creditor's Proof of Claim or on the Petition, the Debtor will be entitled to void said check and retain said funds to be used in the Debtor's discretion. Any Creditor whose funds are once not negotiated or are returned as described above shall not be part of any subsequent distribution.

*E.*    ***Preservation of Avoided Transactions for the Benefit of the Estate.***
All transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property.

*F.* **_Timing of Distributions._**  Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. The Debtor reserves the right to pay any Claim on an earlier or expedited schedule.

*G.* **_All payments or distributions_** made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorney's fees, such creditor must file a fee application with the Court and such costs and attorney's fees must be approved by the Court prior to such costs and attorney's fees becoming part of the creditor's allowed claim.

*H.*    The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

*I.* **_Revocation of Plan._** The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

*J.*    The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

*K.*    Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

*L.*    Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights

or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

*M.*    Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

*N.*    All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

*O.*    ***Exemption from Transfer Taxes***. Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax. Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and except for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

*P.*    ***Procedure for Payment of Professional Fees***.  Current Court approved professionals shall not be subject to the fee application process for services rendered post confirmation.

*Q.*    ***Escrow Arrangements***.    Unless otherwise stated in individual creditor treatments herein, the Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses paid through escrowed funds. The Debtor will pay such expenses directly from and after the Effective Date. Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VI. PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII. PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement. Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan. Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date. This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan. The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## IX. PROVISIONS GOVERNING DISTRIBUTIONS

**A.**    *Delivery of Distributions in General*.    Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

**B.**    *Distribution Dates*.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date as set forth in the treatment provisions for each class.

**C.**    *Cure Period*.  The failure by the Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure. Until the expiration of the thirty (30) day cure period, the Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes. Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.  This provision shall not apply to Truist Bank and cure remedies contained within the loan documents shall control.

## X. ACCEPTANCE OR REJECTION OF PLAN.

## EFFECT OF REJECTION BY AN IMPAIRED CLASS

*A.*    Each Impaired Class Entitled to Vote Separately.    Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

*B.*    Acceptance by a Class of Creditors.    Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

*C.*    Claimants Entitled to Vote.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated, or disputed, and as to which no proof of claim has been filed. The claim shall be

allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules; or

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018.

If an impaired Claim has been filed in an undetermined amount, in which case the creditor holding such claim shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

Any creditor holding two or more duplicate claims shall be entitled to vote only one claim.

D.    <u>Confirmation Hearing</u>.    The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.    <u>Acceptances Necessary to Confirm the Plan</u>. At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.    <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. If any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code. In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XI.   "CRAMDOWN" FOR IMPAIRED CREDITORS

## NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes. The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII.   EFFECT OF CONFIRMATION

**A.**   Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

**B.**   *Injunction*.   As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest. This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property.

**C.**   Confirmation of the Plan shall satisfy all claims or causes of action arising out of any claim settled under the terms of the Plan.

## XIII. RELEASE OF TITLE TO PROPERTY

**A.**   <u>Vehicles</u>. Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in

bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such authority by failure to file any timely objection to this Plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

  **B.** <u>**Real Property**</u>. Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.

## XIV. APPLICATION OF PLAN PAYMENTS

  **A**. All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest monthly according to the amortization schedule proposed for each creditor. If a creditor is entitled to costs and/or attorney's fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorney's fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

  **B.** Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV. RETENTION OF JURISDICTION

The Bankruptcy Court shall retain authority of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.    to determine all objections to the allowance of claims and/or interests;

2.    to determine all applications for allowance of compensation for periods prior to or after the Confirmation Date.

3.    to determine all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting there from.

4.    to determine all controversies and disputes arising under or in connection with the Plan.

5.    to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date.

6.    to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate.

7.    to determine such other matters and for such other purposes as may be provided for in the Confirmation Order.

8.    to determine all disputes regarding property of the Estate.

9.    to establish and adjust procedures for the orderly administration of the Estate.

10.    to determine matters that are subject to proceedings duly removed to the Bankruptcy Court;

11.    to replace the Debtor-in-Possession with a Trustee for compelling cause shown.

12.    to determine and resolve questions concerning the existence of defaults under the Plan;

13.    to modify the Plan pursuant to 11 U.S.C. § 1127(b);

14.    to correct any defect, to cure any omission, to reconcile any inconsistency in the Plan or Confirmation Order as may be necessary to conduct the purposes and intent of the Plan; and

15.    to issue any order necessary to conduct the Plan.

## XVI. MISCELLANEOUS PROVISIONS

**A.    Survival of Terms**.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

**B.    Successors Bound**.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

**C.    Controlling Law**.   This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

**D.    Further Assurance**. If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

**E.    Liens**. Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan. The Debtor shall request, and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

**F.    Incorporation of Disclosure**. All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

**G.    Credit Reporting**.   Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtor has filed bankruptcy and included all obligations owed to that Creditor in their Plan. Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtor's Plan. Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but preconfirmation. Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations. The Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous

credit reporting and the Bankruptcy Court shall retain authority to hear such matters.

**H.**     **Adversary Proceedings**. The Debtor reserves the right to begin or continue any adversary proceedings permitted under Title 11, United States Code, and the applicable Bankruptcy Rules.

**I.**     **Modification of Plan**. The Debtor may submit modifications of the Plan to the Court at any time prior to confirmation pursuant to § 1127.

 **J.**     **Default Remedies**.  Any creditor may serve notice of a default on the Debtor and Debtor's counsel. Such notices shall be in writing and delivered by registered mail to the Debtor. The Debtor shall have thirty (30) days to cure the default. If the default is not cured, any creditor may take such action as the Code permits. This provision shall be cumulative with other rights and remedies provided to parties in interest under the Bankruptcy Code. This provision shall not be applicable to Truist Bank.

**K.**     **Granting of Liens**.  If an existing lien on any property of the Debtor contains language providing that the granting of a lien on that property shall be deemed an event of default, the granting of a lien in accordance with this Plan shall not be deemed an event of default.

 **L.**     **Cancellation of Liens**. Except as otherwise provided specifically in this Plan, all prepetition liens encumbering any of the Debtor's assets, whether deeds of trust, UCC-1 financing statements, or otherwise, shall be deemed canceled of record upon the entry of the Confirmation Order. The Debtor shall be entitled to present this Plan, and the Confirmation Order to any public official charged with the maintenance of records regarding liens, and direct said official to cancel said liens of record.

Respectfully submitted this 23rd day of June, 2025

/s/ Anna Hromyak
Anna Hromyak
Managing Member
Carolina Proud Investments, LLC

/s/ C. Scott Kirk
C. Scott Kirk
Attorney for the Debtor

## Exhibit A
## Liquidation Analysis

| Asset | Value | Secured Claims | Value |
|---|---|---|---|
| 28 Jacobs Rd. Youngstown, OH  44505 | $350,000.00 | $143,029.18 | $206,970.82 |
| 2032 Cherry Lane Winterville, NC  28590 | $250,000.00 | $178,703.00 | $71,297.00 |
| 411 River Branch Rd. Greenville, NC  28590 | $365,000.00 | $346,547.00 | $18,453.00 |
| 2607-B Bluff View Rd. Greenville, NC  27834 | $130,000.00 | $116,266.14 | $13,733.86 |
| 278 Poplar Dr. Beech Mountain, NC  28604 | $7,500.00 | $18.95 | $7,481.05 |
| 298 Poplar Dr. Beech Mountain, NC  28604 | $3,250.00 | $15.03 | $3,234.97 |
| First Citizens #3970 | $1,000.00 | $1,000.00 | $0.00 |
| Office Equipment/ Office Furniture | $1,000.00 | $0.00 | $1,000.00 |

*Gross Estate Value:*                                                      $322,170.07

*Less Ch. 7 Costs of Administration¹:*                        -$41,038.74

*Less Estimated Costs of Ch. 11
Administration²:*                                                          -$20,000.00

---

¹ Chapter 7 Costs are calculated as a trustee's allowed commission pursuant to 11 U.S.C. § 326(a) and auctioneer fees as allowed pursuant to General Order of the United States Bankruptcy Court for the Eastern District of North Carolina dated January 2, 2024.  The chapter 7 administrative costs in this exhibit are calculated to the minimum amount a trustee could request pursuant to the bankruptcy code and general orders of this Court.  Actual costs of chapter 7 administration could be greater than the amount in this exhibit.

² Chapter 11 costs of administration includes all fees that may be allowed by employed professionals pursuant to 11 U.S.C. § 330.  The costs have yet to be determined by the Court.  The Debtor

*Amount Available to Unsecured Creditors:*                    $261,131.33

## Exhibit B
## Summary of Liabilities

| *Creditor* | *Claim*[3] |
|---|---|
| Pitt County Tax Administration (Claim No. 1) | $1,461.14 |
| Mahoning County Treasurer (Claim No. 2) | $6,863.92 |
| Mahoning County Treasure (Claim No. 3) | $5,679.26 |
| Ohio Edison (Claim No. 4) | $10,916.59 |
| First Bank/Citizens Bank | $178,703.00 |
| GREM, LLC | $130,486.00 |
| Pentagon Federal Credit Union | $346,547.00 |
| United Bank | $114,085.00 |
| Watauga County Tax Administration | $33.98 |
| Bank of America | $3,986.00 |
| Bank of America | $9,859.00 |

---

estimates that attorney fees will be $25,000.  The Debtor is unaware of any other post-petition liabilities that may be a cost of administration.

[3] The amount of the claim is determined by the amounts scheduled in D or E/F of the Debtor's schedules.  If a creditor has filed a proof of claim, the filed claim amount will be used for the purposes of this Exhibit.

*Total Estimated Liabilities*                          $808,620.09